1  ROBIN B. JOHANSEN, State Bar No. 79084
   THOMAS A. WILLIS, State Bar No. 160989
2  REMCHO, JOHANSEN & PURCELL, LLP
   201 Dolores Avenue
3  San Leandro, CA  94577
   Phone:  (510) 346-6200
4  FAX:  (510) 346-6201

5  Attorneys for Defendants
   *(Please see signature page for complete list of parties represented.)*

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  ANDREA ESQUIVEL, et al.,            )   No.:  CV 07 5709 MHP
                                        )
12              Plaintiffs,             )   **DEFENDANTS' NOTICE OF MOTION**
                                        )   **AND MOTION TO DISMISS;**
13  vs.                                 )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES IN SUPPORT THEREOF**
14  SAN FRANCISCO UNIFIED SCHOOL        )
    DISTRICT, et al.,                   )
15                                      )           Hearing:
                Defendants.             )
16  _____)   Date:  April 21, 2008
                                            Time:  2:00 p.m.
17                                          Crtrm.:  15

18                                          (The Honorable Marilyn H. Patel)

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS .................................................................................................. 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND FACTS ................................................................................................. 3

     A.    The JROTC Program ................................................................................. 3

     B.    The San Francisco Board of Education's Decision To
            Phase Out JROTC .............................................................................. 4

ARGUMENT

I.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH
       RELIEF CAN BE GRANTED BECAUSE THE FIRST AMENDMENT
       DOES NOT APPLY TO THE BOARD'S DECISION TO PHASE OUT
       JROTC ..................................................................................................... 7

     A.    The First Amendment in the School Context ................................... 7

     B.    Students Do Not Have a First Amendment Right to a Particular
            Curriculum or School Program ..................................................... 10

     C.    Plaintiffs Cannot State a First Amendment Claim Even if Their
            Allegations About the Board's Motivations Are True .................... 16

II.    PLAINTIFFS' DAMAGES CLAIM AGAINST THE BOARD, DISTRICT
       AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES
       IS BARRED .............................................................................................. 18

CONCLUSION ............................................................................................................. 19

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

i

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**CASES:**

4
*Belanger v. Madera Unified Sch. Dist.*, ........................................................ 18
    963 F.2d 248 (9th Cir. 1992)

5

6
*Bethel Sch. Dist. No. 403 v. Fraser*, ........................................................ 8, 9
    478 U.S. 675 (1986)

7
*Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, ........................ passim
    457 U.S. 853 (1982)

8

9
*Brown v. Hot, Sexy and Safer Productions, Inc.*, ........................................ 15, 16
    68 F.3d 525 (1st Cir. 1995)

10
*California Teachers Ass'n v. State Bd. of Educ.*, ......................................... 9
    271 F.3d 1141 (9th Cir. 2001)

11

12
*Chiras v. Miller*, ........................................................................ passim
    432 F.3d 606 (5th Cir. 2005)

13
*Connick v. Myers*, ....................................................................... 9
    461 U.S. 138 (1983)

14

15
*Downs v. Los Angeles Unified Sch. Dist.*, ............................................... passim
    228 F.3d 1003 (9th Cir. 2000)

16
*Edwards v. California Univ. of Pa.*, .............................................. 10, 11, 14, 15
    156 F.3d 488 (3rd Cir. 1998)

17

18
*Epperson v. Arkansas*, ................................................................... 8
    393 U.S. 97 (1968)

19
*Hazelwood Sch. Dist. v. Kuhlmeier*, ................................................. 8, 9, 11
    484 U.S. 260 (1988)

20

21
*Lee v. York County Sch. Div.*, .......................................................... 9
    484 F.3d 687 (4th Cir. 2007)

22
*Mayer v. Monroe County Cmty. Sch. Corp.*, ............................................... 14
    474 F.3d 477 (7th Cir. 2007)

23

24
*Milliken v. Bradley*, .................................................................... 7
    418 U.S. 717 (1974)

25
*Morse v. Frederick*, ................................................................... 8, 9
    ___ U.S. ___, 127 S. Ct. 2618 (2007)

26

27
*Pickering v. Board of Educ.*, ........................................................... 9
    391 U.S. 563 (1968)

28

**TABLE OF AUTHORITIES:** (continued)                                    Page(s)

*Robertson v. Dean Witter Reynolds, Inc.*, ........................................................... 7
   749 F.2d 530 (9th Cir. 1984)

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, .................................. passim
   515 U.S. 819 (1995)

*Rust v. Sullivan*, ............................................................................................. 12
   500 U.S. 173 (1991)

*Swartz v. KPMG LLP*, ....................................................................................... 3
   476 F.3d 756 (9th Cir. 2007)

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, ..................................... 8, 9, 10
   393 U.S. 503 (1969)

*Usher v. City of Los Angeles*, ........................................................................... 3
   828 F.2d 556 (9th Cir. 1987)

*Vanderhurst v. Colorado Mountain Coll. Dist.*, .............................................. 9
   208 F.3d 908 (10th Cir. 2000)

*Webster v. New Lenox Sch. Dist. No. 122*, .................................................. 14
   917 F.2d 1004 (7th Cir. 1990)

*Will v. Michigan Dep't of State Police*, ........................................................ 18
   491 U.S. 58 (1989)

*Wilson v. Layne*, ............................................................................................ 19
   526 U.S. 603 (1999)

**STATUTES:**

32 C.F.R. § 542.3 ............................................................................................. 3
32 C.F.R. § 542.4 ............................................................................................. 3
32 C.F.R. § 542.5 ............................................................................... 3, 4, 5, 14
32 C.F.R. § 542.7 ............................................................................................. 4

10 U.S.C. § 2031 ............................................................................................. 3

**MISCELLANEOUS:**

Federal Rules of Civil Procedure
   Rule 11 ......................................................................................................... 7

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on April 21, 2008, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 15, Eighteenth Floor of the United States District Court, Northern District of California, at 450 Golden Gate Avenue, San Francisco, California 94102, defendants[1] will move to dismiss the complaint for failure to state a cause of action on which relief may be based pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion will be based upon this notice, the memorandum of points and authorities, request for notice, proposed order and all pleadings and papers on file in this action.

Defendants' motion is made on the ground that plaintiffs have failed to state a cause of action on which relief can be granted. Plaintiffs appear to allege that their First Amendment rights have been violated by the San Francisco Board of Education's decision to discontinue the Junior Reserve Officers' Training Corps program at San Francisco high schools. There is, however, no First Amendment right to any particular school curriculum or program, and federal courts have repeatedly stated that curriculum decisions must be left to school officials. In addition, plaintiffs' claim for damages against the school board, the school district and board members in their official capacities is barred by the Eleventh Amendment and is not cognizable under 42 U.S.C. section 1983.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiffs are attempting to use this Court to do what they could not accomplish through the normal political process. Unhappy with the San Francisco Board of Education's decision to discontinue a school program in which they are enrolled, the Junior Reserve Officers' Training Corps (JROTC), they ask this Court to compel the Board to continue offering that program in perpetuity.

The unprecedented nature of the remedy sought – an injunction requiring the School District to offer JROTC forever – is matched only by the complete lack of legal authority to support it.

---

[1] Andrea Esquivel, et al., filed this as a "Petition for Declaratory and Temporary and Permanent Injunctive Relief" but all civil actions must be initiated by a complaint. Fed. R. Civ. Proc. 3, 57, & 65. Therefore, we refer to the Petition as the Complaint and the parties as plaintiffs and defendants.

1    One searches plaintiffs' papers in vain to find any explanation of their legal claim.  The complaint does

2    not contain any cause of action, description of a legal standard, or discussion of how defendants

3    allegedly violated plaintiffs' constitutional rights.  The complaint is nothing more than a long diatribe

4    against the Board's decision to end the JROTC program.  The only reference to any law comes in the

5    first sentence of the petition:  "Petitioners seek declaratory, temporary and permanent injunctive relief

6    under 42 United States Code section 1983, and the case *Board of Education v. Pico* (1982) 457 U.S.

7    853."  *Pico* is a First Amendment case, and plaintiffs therefore must be claiming that San Francisco's

8    decision to phase out the JROTC program somehow infringes their First Amendment rights.

9    　　　　Nothing could be further from the truth.  *Pico* is of no help to plaintiffs and in fact

10   reinforces the principle that schools have complete discretion to decide matters of curriculum.  JROTC

11   is part of the District's curriculum because among other things, students receive academic credit for

12   participating in the program.  Federal courts have consistently held as a matter of law that the First

13   Amendment is simply not implicated when a school district decides what classes, programs, or books

14   to offer students.  To the extent those decisions involve any speech at all, it is the government's

15   speech, and the government is free to choose the content and frame the meaning of that speech.

16   Moreover, in making curriculum decisions, the government does not create a public forum, limited or

17   otherwise, to which First Amendment rights attach.  Simply put, plaintiffs have no First Amendment

18   right to the continued existence of the JROTC program.

19   　　　　Plaintiffs argue that there is something illegal about the Board deciding that the JROTC

20   program no longer meets the educational goals or the values of the District.  Yet these are precisely the

21   types of decisions that the United States Supreme Court has said must be left to school districts to

22   make, and they simply do not raise constitutional concerns.  "[L]ocal school boards must be permitted

23   'to establish and apply their curriculum in such a way as to transmit community values'. . . ."  *Board of*

24   *Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 864 (1982) (citation omitted).

25   　　　　Accordingly, the case must be dismissed with prejudice.

26

27

28
DEFENDANTS' NOTICE OF MOTION AND MOTION TO          2
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

1

## BACKGROUND FACTS

2
When ruling on a motion to dismiss, courts "generally consider only allegations

3
contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

4
notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  The allegations in the complaint

5
must be presumed to be true and all reasonable references are to be made in favor of plaintiffs.

6
*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The following summary of the

7
relevant facts is therefore limited to the applicable law and relevant facts from the complaint and

8
materials subject to judicial notice.

9
### A.    The JROTC Program

10
The Junior Reserve Officers' Training Program (JROTC) is a leadership program

11
sponsored by the Department of Army and offered in public and private high schools throughout the

12
country.  10 U.S.C. § 2031; 32 C.F.R. § 542.3.  Through a series of classes and afterschool activities,

13
students acquire an understanding of military science and citizenship, increase leadership skills and

14
physical fitness, and learn an appreciation for national security and the value of the United States

15
Armed Forces.  32 C.F.R. §§ 542.4 & 542.5.  Such activities include instruction in "first aid, military

16
history, geography, drill, citizenship and scholarship."  Petition for Declaratory, Temporary

17
& Permanent Injunctive Relief, filed November 9, 2007 ("Complaint") at 11.

18
JROTC is run and taught exclusively by active duty or retired members of the United

19
States Army.  32 C.F.R. § 542.5(b).  The JROTC instructors perform their duties under the supervision

20
of the San Francisco Unified School District (SFUSD).  Complaint, ¶ 8.  The Armed Forces pays for

21
50% of the salaries of the instructors and the District pays the other 50%.  *Id.*  Students receive

22
academic credit for participating in JROTC classes.  Therefore, the JROTC program is part of the

23
SFUSD's curriculum.  *Id.*

24
JROTC plays an indirect but important role in recruiting high school students to enlist

25
in the Armed Forces.  JROTC is not an "officer-producing program[ ] but should create favorable

26
attitudes and impressions toward the Services and toward careers in the Armed Forces.  JROTC/NDCC

27
cadets may qualify for an advantageous position in the senior ROTC and for a higher pay grade upon

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

3

1    enlistment in a Regular or Reserve component of the Armed Services." 32 C.F.R. § 542.5(c). JROTC

2    "will enable cadets to better serve their country as leaders, as citizens, and in military service should

3    they enter it." *Id.* § 542.5(b).

4            The program is not open to all students. To be eligible, a student must attend a school

5    full-time, be a citizen of the United States, be at least fourteen years old, and meet certain physical

6    fitness standards. 32 C.F.R. § 542.7(b).

7            Although all qualified students may take part in the program, they are not required to do

8    so, and "[s]tate, community, or school authorities decree whether students must be in the programs."

9    32 C.F.R. § 542.5(d). Thus, JROTC is not a mandated program and school boards are free to decide

10   whether to include the program in their curriculum.

11       **B.    The San Francisco Board of Education's Decision to Phase Out JROTC**

12           The San Francisco Unified School District (SFUSD) offers JROTC at seven of its high

13   schools. Complaint at 16. On November 14, 2006, San Francisco School Board members Mark

14   Sanchez and Dan Kelly introduced Resolution No. 65-23A1, which called for a two-year phase out of

15   the JROTC program in the District. Complaint, Ex. A at 1. The resolution provided that no JROTC

16   programs would be offered in San Francisco schools beginning in the 2008-09 school year and

17   thereafter. It also provided that subsidies for JROTC at the various high schools offering the program

18   would be "re-distributed, as the program is drawn down, to SFUSD high schools on an equitable basis

19   through a weighted student formula, to support and expand opportunities for all students." *Id.* at 2.

20   Finally, the resolution established a special task force that would develop other career-driven programs

21   as an alternative to JROTC. *Id.* at 2. The resolution passed by a 4-3 vote. *Id.*, ¶ 3.

22           The text of the resolution makes clear that the decision to phase out JROTC was based

23   on several pedagogical concerns. First, the Board was concerned that the JROTC instructors, who are

24   active or retired members of the Armed Forces, were not properly credentialed to teach classes offered

25   for physical education (PE) course credit. Students participating in JROTC can receive physical

26   education credit, but JROTC instructors do not possess PE credentials, as is required of all PE teachers

27   in the District. *See* Complaint, Ex. A at 1.

28

1          Second, the Board was concerned that the existence of JROTC at some SFUSD high-

2   schools and not at others created a disparity in funding among schools.  Complaint, Ex. A at 1.  The

3   reason is that students enrolled in JROTC can get credit for physical education classes through the

4   program, and the costs of the program are paid by both the Army and the District, through its central

5   budget, not by the individual schools through their school-site budgets.  In contrast, schools that do not

6   have JROTC must pay for all of their physical education classes through their school budgets.  *Id.*

7   Thus, schools with JROTC receive more funding for physical education classes than do schools that do

8   not have the program.  The Board wanted to end that disparity.  *Id.* at 2.

9          Third, the Board was concerned that JROTC violated the SFUSD policy against

10  contracting with third-party providers that discriminate against any group, including discrimination

11  based on sexual orientation.  The Armed Forces have a "Don't Ask, Don't Tell" policy that prohibits

12  gays and lesbians from serving if they affirmatively identify themselves as gay or lesbian.  *See*

13  Complaint at 10.  In 1991, the Board passed a resolution that prohibited the SFUSD from contracting

14  with any third-party provider of educational materials that discriminated based on, among other things,

15  sexual orientation.  Request for Judicial Notice ("RJN"), Ex. A (Entities "providing educational

16  programs, activities, and services to the San Francisco Unified School District must have the same

17  non-discrimination policies.").  The Board was concerned that the Armed Forces' "Don't Ask, Don't

18  Tell" policy violated their nondiscrimination policy.  Complaint, Ex. A at 2.  Moreover, graduates of

19  JROTC received preferential enlistment options with the military but gay and lesbian students who

20  participated in JROTC would not be able to avail themselves of that benefit.  *See* Complaint at 13;

21  32 C.F.R. § 542.5(c).

22          Fourth, the Board was concerned that through the JROTC program, the Armed Forces

23  were being given an unfair advantage in recruiting students to join the Armed Forces upon graduation.

24  Complaint, Ex. A at 1.  Although the Armed Forces do not recruit directly through the JROTC

25  program, the program is meant to cast the Armed Forces in a positive light and encourage enlistment.

26  As the Army's regulations state, JROTC "should create favorable attitudes and impressions toward the

27  Services and toward careers in the Armed Forces."  32 C.F.R. § 542.5(c).  The Board was concerned

28

1  that the program gave the Armed Forces an unfair advantage over other education or private sector

2  recruiters with regard to access to and recruitment of students.

3          Notwithstanding the reasons given in the Resolution for phasing-out the JROTC

4  program, plaintiffs allege that the Board's decision was based on the political beliefs of the members.

5  They contend the majority of the Board held anti-militaristic views and that it was for that reason that

6  they voted to end the program. Complaint at 16-18. Speaking of the four members who voted for the

7  resolution, plaintiffs allege:

8          These four members have for years identified themselves as political
           "progressives" and as participants in the antiwar movement. They have
9          regularly, publicly and privately criticized capitalism, criticized the
           United States of America, criticized the existence of the U.S. military,
10         advocated bringing all U.S. military forces home from abroad to the
           United States . . . . They have advocated the phase out of the JROTC
11         program to achieve a "curriculum of peace," the removal of "militarism"
           from the respondent school curriculum and as a protest against the "don't
12         ask, don't tell" policy of the U.S. military services.

13                                  *Id.* at 18-19.

14  Plaintiffs characterize the issue this way: whether the phase out resolution was "a constitutional

15  exercise of school board power for the benefit of the students and the country or implementation of

16  four school board members' personal political agenda." *Id.* at 17.

17          On December 11, 2007, the Board voted to amend Resolution No. 65-23A1 and

18  extended the phase out period for one additional school year, through the 2008-09 school year. RJN,

19  Ex. B. Thus, the JROTC program remains in place in the District and will be for one more school

20  year. *Id.*

21          Plaintiffs are four students currently enrolled in the JROTC program in SFUSD high

22  schools, and their guardians. Complaint, ¶ 2. Plaintiffs have named as defendants the Board, SFUSD,

23  the current Superintendent, and nine former and current members of the Board. The Board members

24  and the Superintendent have been sued both in their individual and official capacities. Plaintiffs seek

25  an order against defendants to "refrain from any further action to phase out the Jr. ROTC program" and

26  for "compensatory and punitive damages according to proof" for themselves and all other JROTC

27  cadets. *Id.* at 24-25.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO          6
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

1

## ARGUMENT

2

**I. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN**
3       **BE GRANTED BECAUSE THE FIRST AMENDMENT DOES NOT APPLY TO THE**
      **BOARD'S DECISION TO PHASE OUT JROTC**

4           Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon

5 which relief can be based.  A claim must be dismissed as a matter of law for "(1) lack of a cognizable

6 legal theory or (2) insufficient facts under a cognizable legal claim."  *Robertson v. Dean Witter*

7 *Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).

8           Plaintiffs' case must be dismissed as a matter of law because plaintiffs have not

9 established a cognizable legal theory under which they can proceed.  They allege the First Amendment

10 requires the Board to continue offering the JROTC program, but clear precedent, including from the

11 United States Supreme Court and Ninth Circuit, establishes that students have no constitutional right to

12 a particular school curriculum or program.  The Board's decision simply does not implicate the First

13 Amendment.[2]  Moreover, the Supreme Court has held that school districts have complete discretion to

14 set school curriculum, such as offering or phasing out the JROTC program.

15       **A.**     **The First Amendment in the School Context**

16           Two related principles dictate the scope of the First Amendment in the school context.

17 First, any discussion about the constitutionality of a school board's decision over curriculum "must

18 begin with the recognition that the states enjoy broad discretionary powers in the field of public

19 education."  *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005).  "No single tradition in public

20 education is more deeply rooted than local control over the operation of schools; local autonomy has

21 long been thought essential both to the maintenance of community concern and support for public

22 schools and to the quality of the educational process."  *Milliken v. Bradley*, 418 U.S. 717, 741-42

23 (1974).

24
            [L]ocal school boards have broad discretion in the management of school
25             affairs.  [Citation]  *Epperson v. Arkansas*, [393 U.S. 97], 104, 89 S. Ct at
            270 [(1968)], reaffirmed that, by and large, "public education in our
26

27 ───────────────────
[2] Defendants believe this case is frivolous and therefore reserve their right to seek sanctions under
Rule 11 of the Federal Rules of Civil Procedure.

28

Nation is committed to the control of state and local authorities," . . . . *Tinker v. Des Moines [Indep. Cmty.] School Dist.*, 393 U.S. 503, 507, 89 S. Ct. 733, 736 [ ] (1969), noted that we have "repeatedly emphasized . . . the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools." . . . We are therefore in full agreement with petitioners that local school boards must be permitted "to establish and apply their curriculum in such a way as to transmit community values," and that "there is a legitimate and substantial community interest in promoting respect for authority and traditional values be they social, moral, or political."

*Pico*, 457 U.S. at 863-64 (last citation omitted).

Second, the Supreme Court has cautioned that federal courts should not "intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).

As a result, First Amendment rights in the school setting must be construed "in light of the special characteristics of the school environment." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). "[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). The Supreme Court reiterated these standards just last term in *Morse v. Frederick,* ___U.S. __, 127 S. Ct. 2618 (2007) (holding that a student had no First Amendment right to unfurl a banner saying "BONG HiTS 4 JESUS"). In short, the Court has repeatedly held that a school may limit student speech "even though the government could not censor similar speech outside the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988).

School speech cases divide into five categories, and because each has a different standard, it is critical to determine exactly what First Amendment right is at issue and who is claiming it.

The first category of cases involves a school board's decision regarding the content of school curriculum or textbooks. Those decisions do not implicate the First Amendment at all, because they involve pure government speech. When the government speaks, it is entitled to make content-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709 MHP

based decisions, such as what classes, programs or textbooks to offer.  *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833-34 (1995); *Chiras*, 432 F.3d at 613; *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000).  Plaintiffs' case falls into this category.

The second category involves school-sponsored speech, where a person could reasonably believe the speech carries the imprimatur of the government.  These cases differ from the first category because the speaker is a teacher or student, not the government, and the government seeks to restrict speech.  These cases involve speech in a school-sponsored forum, such as student articles in a school paper or murals painted by students on school property.  In this context, a school can limit speech if to do so is reasonably related to a legitimate pedagogical interest.  These cases are analyzed under *Kuhlmeier*, 484 U.S. 260.

The third category involves teacher speech, and the cases here usually involve a teacher who attempts to supplement class curriculum with unapproved materials or who speaks out in the classroom about controversial issues.  The federal circuits are split on the appropriate standard by which to judge these cases.  Some apply the *Rosenberger* standard, others apply the *Kuhlmeier* standard, and still others apply the *Pickering-Connick*[3] test, a standard which evolved to address employee speech cases.[4]

The fourth category involves pure student speech, such as a student wearing an armband to protest a war or unfurling a banner.  These cases are analyzed under *Tinker*, 393 U.S. 503, and here speech can be limited but only if it is vulgar or lewd (*Fraser*, 478 U.S. 675), reasonably viewed as promoting illegal drug use (*Morse*, 127 S. Ct. 2618), or either will "impinge upon the rights of other

---

[3] The test is named after *Pickering v. Board of Educ.*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983).

[4] Compare *Downs*, 228 F.3d at 1013-14 (Ninth Circuit applies *Rosenberger* to hold that teacher has no First Amendment right to speak independently on curriculum matters) and *Vanderhurst v. Colorado Mountain Coll. Dist.*, 208 F.3d 908, 914-15 (10th Cir. 2000) (applying *Kuhlmeier*) with *Lee v. York County Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007) (applying *Pickering-Connick*).  Even the Ninth Circuit is somewhat split on the appropriate standard.  In *Downs*, 228 F.3d 1003, the court applied the *Rosenberger* standard to a teacher speech case, but one year later, a different panel noted the different standards without citing *Downs* and then decided the case on other grounds.  *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149, n.6 (9th Cir. 2001).

1   students" or will "materially and substantially disrupt the work and discipline of the school" (*Tinker*,

2   393 U.S. at 509, 513).

3            The final category involves the unique circumstances of a school library, and there the

4   Supreme Court has held that books cannot be removed from a school library simply because a school

5   board dislikes the ideas contained in the books. *Pico*, 457 U.S. 853.

6            Plaintiffs appear to be arguing that under the First Amendment the SFUSD must

7   continue offering the JROTC program in the future. *See* Complaint at 17.

8            Importantly, plaintiffs are not contending that SFUSD has limited their speech in any

9   way by, for example, keeping them from speaking in favor of JROTC or the Armed Forces. Nor are

10  they contending that SFUSD has placed limits on anyone else's speech, such as teachers, staff or

11  outsiders, such as the U.S. Army. In any event, even if they were arguing this, they would not have

12  standing to raise those rights.

13           In short, this is simply not a case involving the suppression of speech. Rather, this case

14  falls squarely into the first category of school cases – a challenge to the school district's curriculum

15  decisions.

16  **B.**    **Students Do Not Have a First Amendment Right to a Particular Curriculum
            or School Program**

17

18           Plaintiffs claim they have a right to a particular school program, JROTC. The case law

19  could not be clearer, however, that school boards are given broad discretion over curriculum decisions,

20  and the First Amendment is simply not implicated by those decisions. The reason is that when a

21  school board decides what courses to offer or textbooks to use, it is the speaker for First Amendment

22  purposes. "[T]he First Amendment does not place restrictions on a public university's ability to

23  control its curriculum" because a state must have the "ability to say what it wishes when it is the

24  speaker." *Edwards v. California Univ. of Pa.*, 156 F.3d 488, 491 (3rd Cir. 1998).

25           The United States Supreme Court articulated this principle in *Rosenberger*, 515 U.S.

26  at 833-34. *Rosenberger* involved a claim that the University of Virginia had discriminatorily refused

27  funding to a student group because of its religious message. The Court first noted that a university has

28

1   broad discretion to set its curriculum, and the Court did not "'question the right of the University to

2   make academic judgments as to how best to allocate scarce resources.'"  515 U.S. at 833 (citation

3   omitted).  The Court went on:

> [W]hen the State is the speaker, it may make content-based choices.
> When the University determines the content of the education it provides,
> it is the University speaking, and we have permitted the government to
> regulate the content of what is or is not expressed when it is the speaker
> or when it enlists private entities to convey its own message.

*Id.*

4-8   The Court went on to hold that the University of Virginia could not make viewpoint-

9   based distinctions when it funded various student-run associations, because it had created a forum for

10   private student speech.  But the Court made clear that "[a] holding that the University may not

11   discriminate based on the viewpoint of private persons whose speech it facilitates does not restrict the

12   University's own speech, which is controlled by different principles."  *Rosenberger*, 515 U.S. at 834.

13   The Court also noted that "[w]hen the government disburses public funds to private entities to convey

14   a governmental message," as opposed to the student speech at issue in that case, "it may take

15   legitimate and appropriate steps to ensure that its message is neither garbled nor distorted by the

16   grantee."  *Id.* at 833.

17   One other Supreme Court case is relevant.  In *Kuhlmeier*, 484 U.S. at 272-73, the Court

18   held that a school could limit the speech of students in a school-sponsored forum such as a student

19   newspaper if the restriction was reasonably related to a legitimate pedagogical purpose.  The Court

20   noted that while the school was bound by that standard as long as it permitted the school paper to exist,

21   the school could simply dissolve the newspaper entirely without running afoul of the First

22   Amendment.  *Id.* at 276, n.9.

23   These cases make clear that the First Amendment is not implicated when a school board

24   decides what courses, programs, or textbooks to offer or terminate.  The speech involved is that of the

25   government, and those decisions do not implicate an individual's First Amendment rights.  *Edwards*,

26   156 F.3d at 491.  The case of *Chiras*, 432 F.3d 606 is on point.  There, plaintiffs, a textbook author and

27   a high school student, challenged the Texas State Board of Education's decision not to approve an

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

11

environmental science textbook for use in state high schools. The Board staff originally approved the book but the full Board rejected it, allegedly because the Board was pressured by conservative think tanks. 432 F.3d at 609-10.

Affirming the district court's dismissal, the Fifth Circuit had little trouble finding that no First Amendment rights were implicated. "The government undoubtedly has the authority to control its own message when it speaks or advocates a position it believes is in the public interest." *Chiras*, 432 F.3d at 606. After reviewing *Rosenberger* and *Rust v. Sullivan*, 500 U.S. 173 (1991), the court went on:

> The Supreme Court's decisions in *Rosenberger* and *Rust* elucidate two points that are key in analyzing Chiras' claim. First, in establishing and implementing certain governmental functions, the government, including its educational institutions, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement. Second, the government retains this discretion even where it chooses to employ private speakers to transmit its message.

*Chiras*, 432 F.3d at 613.

In words directly applicable here, the *Chiras* court concluded:

> The SBOE may permissibly exercise a wide degree of discretion in performing its traditional function of selecting a curriculum which promotes the state's chosen educational policy. In doing so, it will necessarily reject some instructional material to which some students may desire to have access. *Nonetheless, where the Board is selecting textbooks for use in the classroom, students have no constitutional right to compel the Board to select materials of their choosing.* As a result, Appellant Rodriquez has no cognizable right to compel the Board to place Chiras' textbook on the approved list of textbooks.

*Id.* at 620 (emphasis added).

The Ninth Circuit came to the same result in *Downs*, 228 F.3d 1003, albeit in the context of a teacher speech case. That case involved the Los Angeles Unified School District's decision to sponsor a Gay and Lesbian Awareness Month. The district provided its schools with posters and materials addressing gay and lesbian issues. Leichman High School created a bulletin board to post those materials and invited faculty to post additional materials related to the topic.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

12

Downs, a teacher at Leichman, objected to the display and posted his own bulletin board across the hall that contained anti-gay statements.  The school ordered Downs' bulletin board to be taken down, and Downs sued under section 1983, claiming he had a First Amendment right to express a differing viewpoint from the school.  228 F.3d at 1005-07.

The court began by reviewing *Kuhlmeier* and the First Amendment standard in school-sponsored speech cases.  The court, however, made clear that *Downs* was not that kind of a case.  Rather, the bulletin board was part of the school's curriculum and therefore was pure governmental speech, not subject to the traditional public forum and viewpoint neutrality analysis involved when a government attempts to regulate the speech of others.  The court wrote:

> [This] is a case of the government itself speaking, whether the government is characterized as Leichman High, LAUSD, or the school board.  It is not a case involving the risk that private individual's private speech might simply "bear the imprimatur" of the school or be perceived by outside individuals as "school sponsored."  Rather than focusing on what members of the public might perceive Downs's speech to be, in this case we find it more helpful to focus on who actually was responsible for the speech on Leichman High's Gay and Lesbian Awareness bulletin boards.

*Id.* at 1011.

The Court went on:

> We do not face an example of the government opening up a forum for either unlimited or limited public discussion.  Instead, we face an example of government opening up its own mouth: LAUSD, by issuing Memorandum No. 111, and Leichman High, by setting up the Gay and Lesbian Awareness bulletin boards.  The bulletin boards served as an expressive vehicle for the school board's policy of "Educating for Diversity."  [Citations.]  Because the bulletin boards were a manifestation of the school board's policy to promote tolerance, and because [school administrators] had final authority over the content of the bulletin boards, all speech that occurred on the bulletin boards was the school board's and LAUSD's speech.

*Id.* at 1012.

Having determined that the case involved government speech, and not school-sponsored speech by individuals (like *Kuhlmeier*), the Court had little trouble finding that the First Amendment was not implicated:

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709 MHP

13

1
2
3
4
5

> We conclude that when a public high school is the speaker, its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis, but instead is measured by practical considerations applicable to any individual's choice of how to convey oneself: among other things, content, timing, and purpose. Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist.

6

*Id.* at 1013.

7   *Downs* is factually different from this case, and a more difficult one under the First

8   Amendment than this case, but its holding is directly applicable. *Downs* involved limiting teacher

9   speech and, as discussed above, there is a split among circuits about the applicable standard for those

10   cases. *See supra* at 9. That dispute is irrelevant here, however, because this case does not involve

11   teacher or student speech, and in any event the Ninth Circuit has taken the position that even with

12   respect to teacher speech, *Rosenberger* controls. *Downs*, 228 F.3d at 1013-14. Several other federal

13   circuit courts have agreed, holding that because school curriculum is government speech, teachers have

14   no First Amendment right to interject their personal beliefs into the school curriculum. *See, e.g.,*

15   *Mayer v. Monroe County Cmty. Sch. Corp.*, 474 F.3d 477, 480, 479 (7th Cir. 2007) ("The Constitution

16   does not entitle teachers to prevent personal views to captive audiences against the instructions of

17   elected officials" so they must stick to "not only the prescribed subject matter, but also the prescribed

18   perspective on that subject matter."); *Edwards*, 156 F.3d at 491 ("a public university professor does not

19   have a First Amendment right to decide what will be taught in the classroom."); *Webster v. New Lenox*

20   *Sch. Dist. No. 122,* 917 F.2d 1004, 1007 (7th Cir. 1990) (teacher has no constitutional right to

21   introduce his own views on creation science).

22   *Rosenberger*, *Chiras*, *Edwards*, and *Downs* control the outcome here. As an initial

23   matter, it cannot be disputed that the JROTC program is part of the SFUSD curriculum. The federal

24   regulations confirm that local schools have complete discretion to determine whether to offer JROTC.

25   32 C.F.R. § 542.5(d). JROTC instructors perform their duties under the supervision of the District and

26   students receive academic credits through the program. Complaint at 15. Therefore the program is

27   part of the SFUSD school curriculum.

28

1        The Board, subject to all applicable state laws, has broad authority to decide what

2   classes, programs, and textbooks to offer its students, and "the First Amendment does not place

3   restrictions on [the Board's] ability to control its curriculum." *Edwards*, 156 F.3d at 491.  The Board's

4   decision to discontinue the JROTC program is no different than the Texas Board of Education's

5   decision to disapprove the use of a particular textbook, or LAUSD's decision to promote Gay and

6   Lesbian Awareness Month, to the exclusion of other books or topics.  The Board has made a decision

7   that discontinuing the JROTC programs serves several important interests, including ensuring that all

8   students receive PE credit from properly credentialed teachers, ensuring more equitable funding of

9   schools, exposing students to a broader range of career and education recruiters and ensuring that the

10  Board's nondiscrimination policy is enforced.  As all of these reasons suggest, the decision to

11  discontinue JROTC involves complicated and often competing educational and societal values.  The

12  Supreme Court has repeatedly stated that those are precisely the issues that should be decided by local

13  authorities rather than the federal courts.  A school district "may permissibly exercise a wide degree of

14  discretion in performing its traditional function of selecting a curriculum which promotes the state's

15  chosen educational policy." *Chiras*, 432 F.3d at 620.

16       If these day-to-day decisions about curriculum were reviewable under the First

17  Amendment, federal courts would quickly be converted into school districts.  Every decision to offer

18  or cancel a class, extracurricular activity, or textbook would be subject to judicial review.  School

19  districts would likely stop offering new programs or classes out of fear that once started, they could

20  never be terminated.  Just as importantly, such a rule would make it virtually impossible for a school

21  district to limit the curriculum being offered.  If JROTC must be offered, so too presumably would

22  programs supporting all other views about the U.S. military and foreign affairs.

23       Such a rule would also put the school district at the mercy of every student and parent to

24  devise individualized curricula:

25            If all parents had a fundamental constitutional right to dictate
          individually what the schools teach their children, the schools would be

26            forced to cater a curriculum for each student whose parents had genuine
          moral disagreement with the school's choice of subject matter.  We

27

28  DEFENDANTS' NOTICE OF MOTION AND MOTION TO      15
DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
MHP

1    cannot see that the Constitution imposes such a burden on state
2    educational systems . . .

                                        *Brown v. Hot, Sexy and Safer Productions,*
3                                       *Inc.*, 68 F.3d 525, 534 (1st Cir. 1995).

4           In sum, because neither students nor parents have any First Amendment or other

5    constitutional right to a particular curriculum, the Board's decision to phase out JROTC was well

6    within the broad discretion given school authorities to shape school curriculum.

7    **C.      Plaintiffs Cannot State a First Amendment Claim Even if Their Allegations
             About the Board's Motivations Are True**

8

9           Plaintiffs' real complaint is against the alleged political views of the Board members

10   who voted to phase out the JROTC program.  Plaintiffs contend that the Board acted to end the

11   program not for reasonable pedagogical reasons, but because of their own negative views of the United

12   States military.  Complaint at 17-19.  Plaintiffs frame the issue in this case as whether the Constitution

13   prohibits the Board from ending the JROTC program when that decision was based on the personal

     political views of the Board members rather than legitimate pedagogical reason.  *Id.* at 17.

14          But even assuming those allegations are true, which we must in a motion to dismiss,

15   plaintiffs still cannot begin to state a constitutional violation.  First, as discussed above, the United

16   States Supreme Court has repeatedly found that school districts have complete authority over their

17   currriculum.  To the contrary, defendants have found no authority supporting plaintiffs' argument that

18   local values cannot play a part in those decisions.  In fact, the opposite is true.  As the Court in *Pico*

19   stated,

20
             [L]ocal school boards must be permitted "to establish and apply their
21           curriculum in such a way as to transmit community values," and "there is
             a legitimate and substantial community interest in promoting respect for
22           authority and traditional values be they social, moral, or political."

23                                      *Pico*, 457 U.S. at 864.

24          Plaintiffs appear to rely exclusively on *Pico* for the proposition that Board action based

25   on the personal views of Board members violates the First Amendment.  That case does not help them.

26   As noted above, *Pico* makes clear that school districts have broad discretion in making curriculum

27   decisions and strongly implies that those decisions do not implicate the First Amendment.  (The Court

28
     DEFENDANTS' NOTICE OF MOTION AND MOTION TO          16
     DISMISS; MEMORANDUM OF POINTS AND
     AUTHORITIES IN SUPPORT THEREOF – NO. CV 07 5709
     MHP

1  explicitly held as much thirteen years later in *Rosenberger*, 515 U.S. at 833-34.)  *Pico* involved a

2  decision by a school board to remove nine books from a school library, even though a library book

3  review committee had recommended that most of the books be retained.  457 U.S. at 856-58.  There

4  was significant evidence suggesting the board had decided to remove the books because it disapproved

5  of the ideas in the books on political, religious, or moral grounds.  Writing the plurality opinion for a

6  divided court (there were six opinions), Justice Brennan held that a student had a First Amendment

7  right to receive ideas and therefore could state a cause of action under the First Amendment if a school

8  board removed books from a school library simply because it disliked the ideas contained in those

9  books and was attempting to prescribe orthodoxy in thought.  *Id.* at 872.  The Court repeatedly stated,

10  however, that the decision was limited to the unique circumstances associated with a school library,

11  and that the Court's holding "does not intrude into the classroom, or into the compulsory courses

12  taught there." *Id*. at 862.

13         In fact, the Court acknowledged that school board members

14            might well defend their claim of absolute discretion in matters of
            *curriculum* by reliance upon their duty to inculcate community values.
15            But we think that petitioners' reliance upon that duty is misplaced where,
            as here, they attempt to extend their claim of absolute discretion beyond
16            the compulsory environment of the classroom, into the school library and
            the regime of voluntary inquiry that there holds sway.
17

18                                    *Id.* at 869 (emphasis in original).

19         The Court repeatedly made the distinction between a school board making a decision

20  about removing library books (which was controlled by the decision) and making decisions about

   school curriculum, textbooks and programs (which was not affected).[5]
21

22         It is for this reason that both the Ninth Circuit in *Downs* and the *Chiras* court found

23  *Pico* irrelevant to the issue of whether plaintiffs in those cases had a First Amendment right:  "Because

24  *Pico* addressed the removal of an optional book from the school library, not the selection of a textbook

25  _____

26  [5] "Respondents do not seek in this Court to impose limitations upon their school Board's discretion to
   prescribe the curricula of the Island Trees schools.  On the contrary, the only books at issue in this case
   are *library* books, books that by their nature are optional rather than required reading.  Our
27  adjudication of the present case thus does not intrude into the classroom . . . ." *Pico*, 457 U.S. at 862
   (emphasis in original).
28

1   for use in the classroom, we decline to apply *Pico* to the facts before us." *Chiras*, 432 F.3d at 619; *see*

2   *also Downs*, 228 F.3d at 1015-16 (rejecting plaintiffs' reliance on *Pico* because the *Pico* court was not

3   "faced with a case of 'school board speech' or 'government speech.'"). Finally, it is worth noting that

4   if plaintiffs could prevail here they "would be able to do to the government what the government could

5   not do to [them]: compel it to embrace a viewpoint." *Downs*, 228 F.3d at 1015.

6          In sum, *Pico* is of no help to plaintiffs. It is a unique case involving the special

7   circumstances of a school library. To the extent it is relevant here, the Supreme Court acknowledged

8   that school officials have broad or even complete authority over curriculum decisions.

9   ## II.   PLAINTIFFS' DAMAGES CLAIM AGAINST THE BOARD, DISTRICT AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES IS BARRED

10          Plaintiffs have brought this action against the Board, the SFUSD and its Superintendent,

11  and nine board members both in their individual and official capacities. In addition to seeking

12  injunctive relief, plaintiffs also seek damages for themselves "and all Jr. ROTC cadets in the SFUSD"

13  for present and future compensatory and punitive damages." Complaint at 25. Because the JROTC

14  program remains in effect through the end of next year's school year, it is hard to imagine what

15  damages plaintiffs could possibly claim. But in any event, even if the Court does not dismiss the entire

16  Complaint, the damages claim must be dismissed against the Board, the SFUSD and the

17  Superintendent and individual Board members to the extent they are being sued in their official

18  capacities. The first reason is that the Eleventh Amendment prohibits damages actions against a state

19  or state officials acting in their official capacities. The Ninth Circuit has clearly held that Eleventh

20  Amendment immunity applies to California school districts. *Belanger v. Madera Unified Sch. Dist.*,

21  963 F.2d 248, 254 (9th Cir. 1992) (holding that California school district and county office of

22  education are arms of the state for purposes of Eleventh Amendment immunity). Similarly, the

23  Supreme Court has held that state entities and state officials are not "persons" subject to suit under

24  42 U.S.C. section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the

25  damage claims must be dismissed against the Board, the SFUSD, and the individual defendants to the

26  extent they are sued in their official capacities.

27

28

1    Finally, the individual defendants will not be liable for damages because of qualified

2    immunity. Defendants acknowledge, however, that if the Court does not dismiss the Complaint now,

3    the question of qualified immunity will likely have to wait for a ruling on the merits because in

4    determining whether a person has immunity, a court first must determine whether the plaintiff has

5    alleged the deprivation of a constitutional right, and if so, then determine "'whether that right was

6    clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999)

7    (citation omitted). For the reasons stated above, defendants strongly believe that plaintiffs do not

8    allege any deprivation of a constitutional right, much less one that was clearly established, and

9    therefore defendants are entitled to immunity. That said, defendants understand that this determination

10   is inextricably tied to the merits of the case. If the Court grants this motion, the issue is moot; if it does

11   not, the issue will likely be decided along with the merits in later briefing. Defendants simply raise the

12   issue to ensure they do not waive it.

13   ## CONCLUSION

14   Plaintiffs are no doubt disappointed that the Board has decided to phase out the JROTC

15   program. And there is no doubt that there is strong disagreement in San Francisco about the program.

16   But that disagreement does not raise the Board's decision to a constitutional issue. The place to debate

17   the merits of the program is before the Board, and that is exactly what happened. The Supreme Court

18   has understandably been unwilling to dictate how those local and political decisions should be made.

19   Plaintiffs claim must be denied.

20   Dated: March 14, 2008                    Respectfully submitted,

21                                            ROBIN B. JOHANSEN
                                             THOMAS A. WILLIS
22                                            REMCHO, JOHANSEN & PURCELL, LLP

23

24   By:  /s/ Thomas A. Willis
          Thomas A. Willis

25   Attorneys for Defendants San Francisco Unified
     School District, San Francisco Board of Education,
26   City and County of San Francisco, Eric Mar, Mark
     Sanchez, Jane Kim, Kim-Shree Maufas, Norman
27   Yee, Jill Wynns, Hydra Mendoza, Carlos Garcia, Dan
     Kelly and Sara Lipson

28