FILED
08 APR -8 PM 2:43

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

ANDREA ESQUIVEL, et al.,

Plaintiffs,

vs,

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,

Defendants.
_____/

No. CV 07 5709 MHP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

Date: April 21, 2008
Time: 2:00 p.m.
Crtrm: 15

LeRUE GRIM SBN 37485
877 Bryant Street, Suite 200
San Francisco, CA 94103
(415) 621 8071
cell (415) 939 3350
fax (415) 621 2129

# ARGUMENT

## I

## FOUR MEMBERS OF THE DEFENDANT SAN FRANCISCO SCHOOL BOARD VOTED TO PHASE OUT THE JrROTC PROGRAM TO SATISFY THEIR PERSONAL, EXTREME ANTIWAR IDEOLOGY, NOT TO BENEFIT THE CADETS/STUDENTS

1. The Defendant San Francisco Unified School District and other defendants argue the case as if the federal courts' reluctance to become involved in local school board decisions on curriculum is absolute. It is not. All aspects of public high school activities must meet federal constitutional requirements.

> Boards of Education...have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes. *West Virginia Board of Education v Barnette,* (1943) 319 U.S. 624, 637.

2. The courts have said a student's right to free speech in the high school setting in the appropriate circumstances includes the provision of reasonably adequate information and ideas or the continuation of providing reasonably adequate information and ideas.

> And we have recognized that "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. *Griswold v Connecticut,* (1965) 381 U.S. 479, 482.
>
> In keeping with this principle, we have held that in a variety of contexts "the Constitution protects the right to receive information and ideas." *Stanley v Georgia* (1969) 394 U.S. 557, 564
>
> More importantly, the right to receive ideas in a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom. Madison admonished us; "A

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
1

> popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy, or perhaps both. Knowledge will forever govern ignorance. And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives." *Board of Education v Pico* (1982) 457 U.S. 853, 867.

3.   This in not a case wherein the plaintiffs requested the Defendant San Francisco Unified School Board to initiate the JrROTC program in the high schools. The JrROTC has been in these high schools for over ninety years (Pet. p 5, 9 - 10), is voluntary and 10% of the student body, 1470 students, are active in the program (Pet. p 8, 10 - 11) 100% of the seniors in the program graduate compared to 73% of the overall seniors graduate (Pet. p 10, 2- 4). In the phase out resolution passed by the Defendant San Francisco School Board was a provision to appoint a Special Task Force to during the two year phase out period to develop a substitute program as effective as the JrROTC in helping students become good citizens and good scholars. (Pet. p 17, 18 - 23; 19, 9 - 20, 2). This Special Task Force has been functioning for over a year and has come up with absolutely nothing. For the last twenty years the Defendant School Board has conducted a "special program" to motivate students to do their homework, behave themselves in class, improve their class participation, improve their grades, earn promotion to the next higher grade and graduate. This program has had little success. (Pet. p 18, 12 - 17) It is reasonable to conclude there is no program that will replace the JrROTC in its successful helping of students.

4.   On the high school campuses where the JrROTC is functioning the students know what it does. It is the only program in the schools which overtly teach good citizenship and good scholarship and makes successful participation a requirement. The cadets like it. The cadets are praised and caused to be proud of

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
2

being good citizens and scholars (Pet. p 6, 12 - 7, 8). The Thursday afternoon drills, conducted by the student officers brings discipline and a structured relationship among the cadets (Pet. 7, 8 - 10). The cadets are encouraged to be proud to be able to respect authority and follow instructions.

5. Throughout the federal court opinions the functions of the local school boards are repeatedly stated

> We are therefore in full agreement with petitioners that local school boards must be permitted to establish and apply their curriculum in such a way as to transmit community values, and that there is a legitimate and substantial community interest in promoting respect for authority and traditional values be they social, moral or political. *Board of Education v Pico* (1982) 457 U.S. 853, 864.

6. The JrROTC program does all of that and more. It teaches its cadets to take pride in his/herself and in his/her appearance, it teaches self-discipline and group discipline, it inculcates pride in accomplishment and quality in achievement, it encourages each student to take primary responsibility for his/her education while being receptive and respectful to teachers in all classes and all fellow cadets, it teaches each cadet to notice the accomplishment of fellow cadets and when a fellow cadet has trouble in his/her academics to go to the fellow cadet's aid, it allows no cadet to fail, it teaches cadets to cooperate with each other and everyone, it provides structure, the cadets are taught to live and function within the structure, it teaches cadets to be honest and truthful, to not cheat on tests, to avoid alcohol and drugs, it teaches cadets to respect each other and their teachers in all classes, to address each other and all others in respectful terms, it teaches cadets to earn the respect of each other and their teachers in all classes, they are taught to do their homework, earn good grades, prepare for college and graduate with honors, to respect their elders, to be proud of excellence and recognize excellence in others, to

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
3

respect the government, nation and the flag, it teaches reasonableness and fairness are the basis for good human relations, they are required to participate in an anti-violence program, there is no fighting, no crime, no gang affiliations, negligible discipline problems and no known disrespect for teachers, every cadet polices every other cadet and him/herself and are peacemakers among the students. The program immediately confronts deviant behavior. The JrROTC cadets regularly participate in the annual clean up on the ocean beach, they collect and contribute 20% of the food to the city food bank, they have an annual toy drive, engage in graffiti removal all over the city, have a plan to help in emergency outreach notice programs, they canvass the neighborhoods to register elderly and disabled persons to contact and provide help during emergencies, they accept and provide special support and help for handicapped and special education students (Pet. 6, 12 - 7, 15). This illustrative list of do's and don't's successfully "transmit(s) community values," and "promote(s) respect for authority and traditional values." These are the core purposes of a school board. The JrROTC program has been evolving for ninety years. It directly impacts the cadets and indirectly benefits the whole student body. This is not a case of the cadets not receiving the curriculum they want, it is a case of the students not receiving the curriculum they need and want, and have been receiving for ninety years. The effect the JrROTC has on the cadets benefits them in all their courses and school activities and benefits all the students in the student body. A school board should keep the best in the curriculum and build on it, not dismantle it to implement their individual extremist political agenda, especially when there is nothing to take its place. This phase out of the JrROTC can reasonably be viewed as an assault on the United States by enemy agents who have infiltrated a local school board. The United States has domestic enemies. Defendant School Board members should manage school curriculum to benefit the students not to

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
4

impose their personal, political extremist enemy ideology on a minute bit of the U.S. citizenry. This violates the students free speech and their right to federal due process.

    7. We have also acknowledged that public schools are vitally important in the preparation of individuals for participation as citizens and as vehicles for inculcating fundamental values necessary to the maintenance of a democratic political system. *Amback v Norwick* (1979) 441 U.S. 68, 76-77.

    8. The JrROTC does not discriminate on the basis of gender, sexual orientation, race, religion or any other basis. LGBT (lesbians, gay, bisexual and transgender) students are accepted, several belong to and participate in the JrROTC program and are treated with respect and affection. The LGBT JrROTC cadets have repeatedly told members of the Defendant San Francisco School Board that they have been accepted and treated well by the program. The JrROTC program does not practice the "don't ask, don't tell" policy and expressly condemns it. (Pet. p 7, 26 - 8, 8).

    9. In compliance with directives from the U.S. Congress and Department of Defense the JrROTC program has not and does not recruit for any military service, does not promote the military service as a career, never mentions defending the country against its enemies, and never encourages cadets to join a military service or to join the Sr.ROTC in college (Pet. p 5, 19 - 6, 2). The cadets are taught a mild and enlightened patriotism, are taught about the values of their country and once each week for two hours the cadets drill in formation wearing a neat, well tailored uniform, commanded by senior cadets who have earned promotions in rank. (Pet. p 7, 8 - 10). The JrROTC cadets and honor guard, with flags, are regular and popular features at public events in San Francisco.

    10. Now the Defendant School Board seeks to phase out the JrROTC

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
5

because it constitutes "militarism" in the schools (Pet. p 11, 1 - 9), which is an extravagant exaggeration, "recruits" for the military, which is completely untrue and to protest the "don't ask, don't tell" practice of the U.S. military (Pet. p 10, 18 - 25) which is an improper use of school board power, without any effective program to replace it. The JrROTC program is a large part of the motivational apparatus of the high schools. Successive school boards over the decades have provided the benefits of the JrROTC to the students. The present school board cannot arbitrarily, capriciously and without compelling cause take it away to impose its members' ideologically based antiwar agenda. In fact there may not be a program which combines the effective features of the JrROTC to replace it. They want to eliminate a highly successful program to the detriment of the students to satisfy their personal, hostile ideological values . Defendant School Board does not claim to have anything adequate in effectiveness to take the place of the JrROTC. There is a difference between a school board refusing to begin a JrROTC in a school system and eliminating a highly successful and effective ongoing program, without any program to take its place. Doing this will have a direct detrimental impact on a substantial portion of the student body and an indirect detrimental impact on the whole student body without any rational adequate justification merely to impose an irrelevant private agenda.

   11. Where there are two mutually exclusive options and one is to a substantial number of students highly beneficial by providing these students with instruction, structure, information and ideas and the other option is to the same students extremely detrimental by taking from these students this same instruction, structure, information and ideas without any adequate justification, without any substitute, the student's are entitled to the beneficial option which does not "contract" the flow of information, knowledge and ideas under the freedom of speech right and

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
6

due process.

12. This is not strictly an issue of curriculum, it is more. It is an issue of a program which promotes a noble self-vision of the complete human being to the students, provides motivation, instills pride and ambition, promotes an essential set of social values and honors success. All this is to be eliminated for pretended reasons, which are to prevent recruitment for the army, to eliminate militarism from the schools and to protest the "don't ask, don't tell" policy of the U.S. military, all of which is merely of cover to conceal the true reasons, which is to strike a blow in a global ideological struggle, which is a flagrant misuse of school board power.

II

THE DEFENDANT SAN FRANCISCO SCHOOL BOARD DOES NOT PROVIDE A BALANCED CURRICULUM FOR THE STUDENTS BY OMITTING ALL MATERIAL SUPPORTING THE NEED FOR A DEMOCRACY TO DEFEND ITSELF AGAINST FOREIGN AND DOMESTIC ENEMIES

13. In today's world the United States, the democracy, has foreign and domestic enemies. The issues of war and peace have gained importance with the advent of atomic weapons and the glorification of martyrdom. Global adversaries come and go and proliferate, they change in their reasons and they build their arsenals. The prohibition of the subjects of war and peace from the high school curriculum, with no useful examination of the subject by the students, leaves an enormous gap in the preparation of the student to participate competently in the democracy. The omission is intentional. The omission violates the free speech rights of the students. And this omission is an implementation of school board members' personal, ideologically based political agenda.

14. The issues of the world in which we live dictates the constitutionally mandated minimum subject matter content of the high school curriculum. High school curriculums are not created in a vacuum. They must address the important issues

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
7

presented by the world in which the student will live. The curriculum must transmit the values of the community, not the perverse views of a small lunatic fringe which is unremittingly hostile to the United States.

> ...the Court has acknowledged the importance of the public schools "in the preparation of individuals for participation as citizens, and in the preservation of the values on which our society rests." *Ambush vs Norwick* (1979) 441 U.S. 68, 76

15. The application of constitutional provisions change with the evolving world. The constitution was intended by its founders to be adequate to the changing world. The founders certainly intended the constitution permit the survival of the nation. Enhancing national survival is a civic virtue.

> In a variety of academic settings the Court therefore has acknowledged the force of the principle that schools, like other enterprises operated by the State, may not be run in such a manner as to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion. 457 U.S. 876.

16. Protecting the democracy against foreign and domestic enemies is a legitimate concern of a citizen. It is a matter about which the high schools should provide some learning. Without such teaching the high school graduate is less prepared, inadequately prepared, to competently participate in the democracy. The Defendant School Board does nothing positive about this issue, Instead, it uses its powers to stifle learning and discussion on this crucial issue and uses the book "ADDICTED TO WAR" as the resource for U.S. history.

17. Every case cited and quoted by defendants is not in point. In the Rosenberger case, the holding of the case is set forth as follows';

> The University does acknowledge (as it must in light of our precedents) that "ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts..." *Rosenberger*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
8

*v Rector & Visitors of Univ. of Va.* (1995) 515 U.S. 819, 831.

18. The vote by the four school board members who voted to phase out the JrROTC did so to express their antiwar ideology. They seek to obliterate a point of view from the curriculum with which they disagree and by doing so they cast a pall of orthodoxy over the classroom. The presentation of the issues of war and peace can be done in a variety of ways which would meet constitutional requirements, but silence in the curriculum is not balanced constitutional presentation.

> ...the classroom is peculiarly the marketplace of ideas...The First Amendment therefore does not tolerate laws that cast a pall of orthodoxy over the classroom...free public education, if faithful to the ideal of secular instruction and political neutrality, will not be partisan or enemy of any class, creed, party, or faction...that imposition of ideological discipline was not a proper undertaking for school authorities. *School Board vs Pico id.* 457 U.S. 853.

19. The defendant School Board seeks to make the high schools "enclaves of totalitarianism," which is not constitutionally allowed.

> While none of these cases define the limits of a school board's authority to choose a curriculum and academic materials, they are based on he general proposition that state operated schools may not be enclaves of totalitarianism...In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate." *Tinker vs Des Moines School Dist.* (1969) 393 US. 503, 511.

## CONCLUSION

For all these above reasons the motion to dismiss should be denied.

Respectfully submitted,

*[signature]*

LeRue Grim
Attorney for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
9

Proof of service by mail

I, LeRue Grim, declare:

I am the attorney of rrecord for all plaintiffs in the case.

On April 8, 2008, I served the attached Plaintiffs' Opposition to Motion to Dismiss and Addendum to Plaintiffs' Opposition to Motion to Dismiss and Memorandum of Points and Authorities by placing of copy of each document in an envelop, sealing it, placing it in the U.S. Mail at San Francisco, CA with sufficient postage addressed to the following:

ROBIN B. JOHANSEN, ESQ
THOMAS A. WILLIS, ESQ
REMCHO, JOHANSEN & PURCELL LLP
201 Dolores Avenue
San Leandro, CA 94577

I, LeRue Grim, declare under penallty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of April, 2008 in the Northern District of California, USA.

_____
LeRUE GRIM