UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA ESQUIVEL, et al., | No. C 07-05709 MHP |
| Plaintiffs, | |
| v. | **MEMORANDUM & ORDER** |
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al., | **Re: Motion to Dismiss** |
| Defendants. | |

On November 9, 2007 plaintiff Andrea Esquivel and three other students currently enrolled in the Junior Reserve Officer's Training Corps ("JROTC") program and their guardians brought this action[1] against defendants under 42 U.S.C. section 1983, claiming that the San Francisco Board of Education (the "Board") violated their First Amendment rights by deciding to terminate the JROTC program after the 2008–09 school year. On March 14, 2008 defendants filed a motion to dismiss. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

The JROTC is a leadership program sponsored by the Department of the Army and is offered to public and private high school students throughout the country. Through a series of classes and after-school activities, students acquire an understanding of military science and citizenship, increase leadership skills and physical fitness, and learn an appreciation for national security and the value of the United States Armed Forces. 32 C.F.R. §§ 542.4, 542.5.

JROTC is run and taught exclusively by active duty or retired members of the United States Army. Id. § 542.5(b). The Armed Forces pay half the salaries of the instructors and the San

Francisco Unified School District ("SFUSD") pays the other half. Complaint at 6. Students receive academic credit for participating in JROTC classes, but the program is not open to all students. To be eligible, a student must attend school full-time, be a citizen of the United States, be at least fourteen years old, and meet certain physical fitness standards. 32 C.F.R. § 542.7(b). Although all qualified students may take part in the program, they are not required to do so, and "[s]tate, community, or school authorities decree whether students must be in the programs." Id. § 542.5(d).

The SFUSD offers JROTC at seven of its high schools. Complaint at 16. This program has been in place in the SFUSD for 91 years. Id. at 5. Approximately ten percent of the student body, or 1,470 students, participate in the program. Id. at 6. All of the seniors in the program graduate, compared to the 73% overall graduation rate within the SFUSD. Id. at 10.

On November 14, 2006 Board members Mark Sanchez and Dan Kelly introduced Resolution No. 65-23A1, which called for a two-year phase out of the JROTC program in the SFUSD. Complaint, Exh. A at 1. The resolution provided that no JROTC programs would be offered in San Francisco schools beginning with the 2008–09 school year. It also provided that subsidies for JROTC at the various high schools offering the program would be "re-distributed, as the program is drawn down, to SFUSD high schools on an equitable basis through a weighted student formula, to support and expand opportunities for all students." Id. at 2. Finally, the resolution established a special task force that would develop other career-driven programs as an alternative to JROTC. Id. The resolution passed by a 4-3 vote. Complaint at 4.

In 2007 the Board extended the elimination date of JROTC from the end of the 2007–08 school year to the end of the 2008–09 school year. Ball Dec., Exh. B.[2] The extension was designed to allow for sufficient time to develop and implement alternatives to the JROTC program. Id. One of the alternatives currently being considered is a program designed by an organization named the "Teach Peace Foundation." Pl's. Addendum, Exhs. A, B.[3]

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule

2

1  12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court
2  may [typically] look only at the face of the complaint to decide a motion to dismiss." <u>Van Buskirk</u>
3  <u>v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally
4  confined to consideration of the allegations in the pleadings, when the complaint is accompanied by
5  attached documents, such documents are deemed part of the complaint and may be considered in
6  evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265,
7  1267 (9th Cir. 1987).

8        A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a
9  claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974
10 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient
11 facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699
12 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most
13 favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir.
14 1996). The court need not, however, accept as true allegations that are conclusory, legal
15 conclusions, unwarranted deductions of fact or unreasonable inferences. See <u>Sprewell v. Golden</u>
16 <u>State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001); <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752,
17 754–55 (9th Cir. 1994).

18

19 <u>DISCUSSION</u>

20       Plaintiffs claim that the SFUSD has violated their First Amendment rights by refusing to
21 offer the JROTC program in the future. Defendants brought this motion to dismiss under Rule
22 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiffs cannot state a valid
23 cause of action because the First Amendment does not limit the ability of a school district to decide
24 matters of school curriculum. They claim that the First Amendment is inapplicable when a school
25 district decides what classes, programs or books to offer students. Further, they claim, to the extent
26 that those decisions involve speech, they involve governmental speech, which cannot be
27 circumscribed by this court. Finally, they argue that no public forum is created through this speech.
28

3

1   Plaintiffs untimely opposition — which was seven days late — purports to present the
2 following two arguments: 1) the Board's decision was based on personal anti-war ideology and was
3 not for the students' benefit; and 2) the Board does not provide a balanced curriculum for the
4 students. The majority of the opposition, however, is a diatribe against the Board's decision to
5 discontinue the JROTC program and devoid of legal argument.

6   The text of the Board resolution states that the decision to phase out JROTC was based on
7 several pedagogical concerns. First, the Board was concerned that the JROTC instructors, who are
8 active or retired members of the Armed Forces, were not properly credentialed to teach classes
9 offered for physical education ("PE") course credit. Students participating in JROTC can receive PE
10 credit, but JROTC instructors do not possess PE credentials, as is required of all PE teachers in the
11 SFUSD. See Complaint, Exh. A at 1.

12   Second, the Board was concerned that the existence of JROTC at some SFUSD high schools
13 but not at others created a disparity in funding among schools because students enrolled in JROTC
14 can get PE credit through the program, and the costs of the program are paid by both the Army and
15 the SFUSD, through its central budget, not by the individual schools through their school-site
16 budgets. In contrast, schools that do not have JROTC must pay for all of their PE classes through
17 their school budgets. Id. The Board wanted to end this disparity. Id. at 2.

18   Third, the Board was concerned that the JROTC program violated the SFUSD policy against
19 contracting with third-party providers that discriminate based on sexual orientation. In 1991, the
20 Board adopted a policy whereby the SFUSD is prohibited from discriminating on the basis of, *inter*
21 *alia*, sexual orientation when providing educational programs, services or activities. Ball Dec., Exh.
22 A. This resolution further provides that organizations, associations and independent contractors
23 providing educational programs, activities, and services to the SFUSD must have the same non-
24 discrimination policies. The Armed Forces, however, have a "Don't Ask, Don't Tell" policy that
25 prohibits gays and lesbians from serving if they affirmatively identify themselves as gay or lesbian.
26 See Complaint at 10. The Board contended that the Army's policy violated the SFUSD policy.
27 Complaint, Exh. A at 2. This argument, however, is refuted by the plaintiffs in their complaint,
28 which states that the JROTC does not adhere to the "Don't Ask, Don't Tell" policy. Complaint at 8.

4

On a motion to dismiss, the court must take allegations in the complaint to be true; consequently, this rationale is unpersuasive at this stage in the proceedings.

Fourth, the Board was concerned that through the JROTC program, the Armed Forces were being given an unfair advantage over other education or private sector recruiters with regard to access to and recruitment of students. Id. at 1.

Plaintiffs present evidence that one of the alternatives being considered to replace the JROTC program is a program designed by an organization named the "Teach Peace Foundation." This alternative, they claim, shows the bias of the Board; however, this program has not been adopted and consequently, the court does not find this to be evidence of the Board's bias. In light of the lack of evidence of animus presented by plaintiffs, it is unlikely that the Board's decision to phase out the JROTC program was based on personal bias.[4] However, on a motion to dismiss, the court will assume that factual assertions made in the complaint are true—namely, that the Board members acted out of personal bias. Nevertheless, plaintiffs' claims fail.

In support of its arguments, plaintiffs rely upon snippets of language from six Supreme Court opinions: 1) West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624 (1943); 2) Stanley v. Georgia, 394 U.S. 557 (1969); 3) Griswold v. Connecticut, 381 U.S. 479 (1965); 4) Ambach v. Norwick, 441 U.S. 68 (1979); 5) Tinker v. Des Moines Sch. Dist., 393 U.S. 503, 511 (1969); and 6) Bd. of Educ. v. Pico, 457 U.S. 853 (1982).

Plaintiffs citations are a smorgasbord of quotations from inapposite cases. Barnette prohibited public schools from compelling students to salute the flag. Stanley pertained to the private right to receive obscene material without committing a crime. Griswold established the right of privacy to use contraceptives without government interference. Ambach found that a New York law barring non-citizens from teaching in public schools did not violate the equal protection clause. Tinker discussed whether public schools could ban the wearing of black armbands by students to protest the Vietnam war. Finally, Pico addressed the removal of books from a school library. Pico is the only First Amendment case cited by plaintiffs that is relevant to this motion.

In the First Amendment context, public schools present a unique setting. "First Amendment rights, applied in light of the special characteristics of the school environment, are available to

5

1 teachers and students." Tinker, 393 U.S. at 506. However, "the constitutional rights of students in
2 public school are not automatically coextensive with the rights of adults in other settings." Bethel
3 Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986). Indeed, the Court has allowed limitations on
4 student speech "even though the government could not censor similar speech outside the school."
5 Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988).

6        In Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995), plaintiffs claimed
7 that the University of Virginia unconstitutionally refused funding to a student group because it had a
8 religious purpose. In its discussion, the Court noted:

> When the University determines the content of the education it provides, it is the University speaking, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message.

Id. at 833. The Court found that viewpoint discrimination in a public forum may be impermissible. It stated, "[t]he University does acknowledge (as it must in light of our precedents) that ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts . . . ." Id. at 830. The Court went on to hold that the University could not discriminate on the basis of viewpoint in its funding decisions because the University's decision to fund student groups at large had created a metaphysical public forum. Id. at 830–36. Nevertheless, the Court explicitly clarified that "[a] holding that the University may not discriminate based on the viewpoint of private persons whose speech it facilitates does not restrict the University's own speech, which is controlled by different principles." Id. at 834.

       Plaintiffs make a feeble attempt to argue that eliminating the JROTC program is, in fact, a funding decision that discriminates on the basis of viewpoint. This argument suffers from numerous flaws. First, this would convert every school board decision to one of constitutional dimension. All decisions regarding courses and programs to offer are by their nature based on viewpoint and/or content. In light of limited resources—both financially and temporally in terms of the school day—school boards must engage in both content and viewpoint based discrimination. For instance, content based decisions involve offering a course in economics at the expense of a course of medieval history and viewpoint based decisions involve selecting a science book highlighting

6

genetics at the expense of one that emphasizes global warming. This court has found no precedent to authorize such a wholesale overhaul of First Amendment jurisprudence.

Second, no public forum—limited, metaphysical or otherwise—is created by the Board's decision to eliminate an optional education program offered for academic credit. The decision to eliminate the JROTC program is based on pedagogical concerns and a stated policy to eradicate discrimination based on sexual orientation and adhere to conflict resolution strategies that promote non-violent behavior. See Complaint, Exh. A.

Finally, even though decisions by schools boards are often contentious, the First Amendment does not limit the government's ability to speak, such as when deciding what to teach in public schools. According to binding Supreme Court precedent:

> When the University determines the content of the education it provides, it is the University speaking, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message. In the same vein, in Rust v. Sullivan, supra, we upheld the government's prohibition on abortion-related advice applicable to recipients of federal funds for family planning counseling. There, the government did not create a program to encourage private speech but instead used private speakers to transmit specific information pertaining to its own program. We recognized that when the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes. 500 U.S., at 194, 111 S.Ct., at 1773. When the government disburses public funds to private entities to convey a governmental message, it may take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted by the grantee.

Rosenberger, 515 U.S. at 833; see also Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1013 (9th Cir. 2000) ("when a public high school is the speaker, its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis . . . ."). Along the same vein, the Board can make changes to the course and program offerings to promote a particular policy. Indeed, the Board can certainly so if the decision is based on legitimate pedagogical concerns.

Moreover, to inject First Amendment analysis in this area would transform federal courts into de facto school boards, saddling them with difficult pedagogical and political decisions that are best left to elected officials. Courts lack any judicially manageable standards and schools could be required to offer an unlimited menu of academic choices, with personalized curricula that no school district has the resources to sustain.

7

Plaintiffs claim <u>Pico</u> compels a different result. 457 U.S. 853. The plaintiffs in <u>Pico</u> protested the removal of certain books from a public school's library, which were removed due the school board's personal views. In a fractured decision with six different opinions, the Court held unconstitutional the decision to remove books from school library shelves simply because the school board disliked the ideas contained therein. Nevertheless, the Court remanded because there existed an issue of fact regarding whether the board exceeded constitutional limitations on its discretion to remove the books.

The Court held that the "imposition of ideological discipline was not a proper undertaking for school authorities." <u>Id.</u> at 853. It went on to state that the "Constitution protects the right to receive information and ideas" and that "the right to *receive* ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom." <u>Id.</u> at 867.

> In a variety of academic settings the Court therefore has acknowledged the force of the principle that schools, like other enterprises operated by the State, may not be run in such a manner as to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.

<u>Id.</u> at 876. The Court, however, limited its decision to the unique circumstances associated with a school library, stating that the Court's holding "[did] not intrude into the classroom, or into the compulsory courses taught there." <u>Id.</u> at 862.

The JROTC program shares some parallels with the situation in <u>Pico</u>. The SFUSD, at one time, voluntarily decided to provide the JROTC program, just as the school board in <u>Pico</u> decided, at one time, to place certain books in the library. Students may enroll in the JROTC program if they choose, just as students could choose to read books shelved at their school library. Finally, just as in <u>Pico</u>, the JROTC program was allegedly eliminated due to the Board's decision to prescribe what shall be orthodox in thought regarding politics, nationalism or other matters of opinion. However, one distinguishing characteristic of the JROTC program removes it from the ambit of the holding in <u>Pico</u>. Specifically, there is a distinction between a school board offering a course or program of instruction for credit and placing books in the school library. Placing books in the library, albeit necessary, has little to nothing to do with the school's curriculum, whereas providing or not providing the JROTC program for credit is part of the SFUSD curriculum. Indeed, the fact that the

8

JROTC program is offered for credit gives the Board wide discretion, without regard to their individual biases. The Court has acknowledged that local school board members "might well defend their claim of absolute discretion in matters of *curriculum* by reliance upon their duty to inculcate community values." Id. at 869. The Court recognized that when making curriculum decisions, local school boards have wide discretion:

> We are therefore in full agreement with petitioners that local school boards must be permitted to establish and apply their curriculum in such a way as to transmit community values, and that there is a legitimate and substantial community interest in promoting respect for authority and traditional values be they social, moral or political.

Id. at 864. Plaintiffs list a litany of civic and community values that are instilled by the JROTC program. Opp. at 3–4. This litany, however, does not demonstrate why elimination of the JROTC program for a different program—instituted by the Board, which represents the community interest—is in contravention to the language above. The Board can and should represent the community values in their locale—it is not up to this court to determine whether those values are acceptable.

The fact that enrollment in the JROTC program is optional does make this a closer case than one involving a course required for graduation. However, schools offer students a plethora of choices when it comes to courses. Indeed, a large number of course offerings is the hallmark of prestigious educational institutions. Here, the decision *whether to offer* a particular program or not is the curriculum choice made by the Board. Consequently, as long as the Board can make an argument that their curriculum choice transmits community values, their subjective rationale for the curriculum change is irrelevant. Here, the Board's decision is explicitly premised upon a desire to eliminate sexual orientation discrimination and pursue conflict resolution strategies that promote non-violent behavior. Just like the values expressed though the JROTC program, the competing values served by replacement of the JROTC program with one promoting non-violence are perfectly legitimate community values to pursue. The court expresses no opinion as to whether the set of values espoused by the JROTC program are in any way superior to or inferior to the set of values espoused by its elimination or replacement by an "anti-war" program.

9

Plaintiffs' grievance is with the democratic process. Their preferred curriculum has become the minority view after ninety years of enjoying majority status. Now, instead of voting in new Board members to better reflect community values, plaintiffs come to this court, which is institutionally incompetent to weigh competing community values to determine which should prevail. Decisions of that nature are properly vested in democratically elected officials with public accountability. Thus, even if the Board was acting to further a personal agenda, their decision to make curriculum changes on that basis is not unconstitutional given their demonstration of community values served by elimination or replacement of the JROTC program.

Plaintiffs also argue that the school board is effectively eliminating a highly successful program with no adequate proposed replacement. Opp. at 6. This is true; however, the same does not magically create a constitutional issue. Furthermore, the Board recognizes that it had not found an adequate replacement and therefore extended the JROTC program for another year. The Board's failure to have found, at this time, a replacement that is acceptable to plaintiffs does not raise the issue to one of constitutional dimension, nor does it require the court to dictate which sort of civic values program the Board should adopt.

In light of the above discussion, contrary to plaintiffs' assertion, the court does not find that the Board "does not provide a balanced curriculum for the students by omitting all material supporting the need for a democracy to defend itself against foreign and domestic enemies." Opp. at 7. Here, the Board is speaking when it makes curriculum decisions, therefore, no first amendment violation can be found. Indeed, "[s]imply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist." Downs, 228 F.3d at 1013. Therefore, plaintiffs have failed to state claim upon which relief can be granted.[5]

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

IT IS SO ORDERED.

Dated: May 16, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10

# ENDNOTES

1.     Plaintiffs style their complaint as a "Petition for Declaratory and Temporary and Permanent Injunctive Relief." <u>See</u> Docket No. 1.

2.     Pursuant to Federal Rule of Evidence 201, the court hereby takes judicial notice of: 1) the Board's "Policy on Non-Discrimination of Cooperating Organizations," Ball Dec., Exh. A; and 2) the Board's "Amendment of Resolution of 65-23A1 to Extend JROTC as an Elective Course for the 2008-09 School Year," <u>id.</u>, Exh. B.

3.     Plaintiffs' addendum fails to comport with the Civil Local Rules of this district which require exhibits to be attached to sworn declarations.

4.     The court is concerned about plaintiffs' unsupported assertion that "[t]his phase out of the JrROTC program can reasonably be viewed as an assault on the United States by enemy agents who have infiltrated a local school board." Opp. at 4. Such accusations, without any evidence, are designed to inflame and provide no legal support for plaintiffs' argument. Counsel for plaintiffs is advised that such irrational and scurrilous statements are undoubtedly sanctionable and to be avoided in the future.

5.     Since the court is granting defendants' motion to dismiss, it has no occasion to reach defendants' argument that plaintiffs' damages claim against the Board, SFUSD and the individual defendants in their official capacities is barred.